IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
IN ADMIRALTY
CASE NO. 7:22-cv-00217

YVONNE ELLIOTT,

    **Plaintiff,**

v.

EDWIN CLARY BARTLETT, JR.,
EDWIN CLARY BARTLETT, SR., and
SANDRA ISENHOUR BARTLETT,

    **Defendants.**

**COMPLAINT**

Plaintiff Yvonne Elliott, by and through her attorneys, files this Complaint under the general maritime law of the United States against Edwin Clary Bartlett, Jr., the operator of a vessel involved in an incident that occurred on the navigable waters of the United States in North Carolina, and Edwin Clary Bartlett, Sr., and Sandra Isenhour Bartlett, who were the owners of the vessel involved in the aforementioned incident, and Plaintiff further alleges the following:

## JURISDICTION, PARTIES AND VENUE

1. This action is brought under Rule 9(h) of the Federal Rules of Civil Procedure, in Admiralty and under the General Maritime Law of the United States, 28 U.S.C. § 1333, and 46 U.S.C. § 30103 *et seq.* It arose out of Plaintiff's injuries sustained while riding as a passenger aboard the UNNAMED GRADY-WHITE VESSEL, with North Carolina registration "NC 8116 DT" and HIN#: NTLST1168B212, powered by twin 150 HP Yamaha outboard motors (hereafter the "Vessel") which was owned and maintained by Defendants Edwin Clary Bartlett, Sr. and Sandra Isenhour Bartlett, and was being operated at the time of the Incident by Defendant Edwin Clary Bartlett, Jr., on the navigable waters of the United States near Wrightsville Beach, North

Carolina on July 9, 2022. Plaintiff's injuries from this maritime tort were caused by the Defendants' negligence, gross negligence, recklessness, and wanton conduct, as will be more fully described below. The Plaintiff, an injured passenger, is entitled to recover damages from Defendants, jointly and severally.

2. At all times material hereto, Plaintiff Yvonne Elliott (hereafter "Plaintiff") was an individual citizen and resident of New Hanover County, North Carolina.

3. At all times material hereto, Defendant Edwin Clary Bartlett, Jr., who goes by the nickname "E.B." (hereafter "Defendant E.B.") was a citizen and resident of New Hanover County, North Carolina.

4. At all times material hereto, Defendants Edwin Clary Bartlett, Sr. and Sandra Isenhour Bartlett, (hereafter "Defendants Mr. and Mrs. Bartlett") were citizens and residents of New Hanover County, North Carolina and owners of the Vessel.

5. At all times material hereto, Defendants Mr. and Mrs. Bartlett, as owners of the Vessel, had the legal obligation to ensure that the Vessel was safe to operate, navigated safely, was equipped with all required safety equipment and devices, and had a further obligation to only entrust the Vessel to safe operators, in safe conditions, and were otherwise responsible for the navigation of the Vessel and torts caused by the Vessel's operation.

6. Upon information and belief, the Vessel was not bare boat chartered to anyone at any time material hereto.

7. Prior to the voyage involving the Incident defined below, the Vessel was docked at the home of its owners, Defendants Mr. and Mrs. Bartlett, and located within the Southern Division of the United States District Court for the Eastern District of North Carolina.

8. Upon information and belief, on the voyage which involved the Incident described below, and on many prior occasions, the Vessel was operated by Defendant E. B. with Defendants Mr. and Mrs. Bartlett's express permission, consent, and approval.

9. Upon information and belief, on the voyage involving the Incident described below, Defendant was operating the Vessel on the navigable waters of the United States and within the Southern Division of the United States District Court for the Eastern District of North Carolina.

10. Venue is proper in the Southern Division of the United States District Court for the Eastern District of North Carolina.

## FACTS

11. The allegations in the paragraphs above are re-alleged as if fully set forth herein.

12. On the afternoon of July 9, 2022, Defendant E.B. and Plaintiff arrived at the home of his parents, Defendants Mr. and Mrs. Bartlett, where the Vessel was docked.

13. Defendant E.B. asked his parents for permission to operate the Vessel that evening in order for him to transport Plaintiff and himself south on the Atlantic Intracoastal Waterway ("ICW") to Southport, North Carolina, in order to have dinner at a restaurant.

14. Defendant E.B. and Defendants Mr. and Mrs. Bartlett, discussed the fact that it would be dark on the water upon the return from Southport, and that unfavorable weather might occur later in the evening, but Defendants Mr. and Mrs. Bartlett agreed that Defendant E.B. could nonetheless operate the Vessel from their home in Wrightsville Beach down the ICW to Southport and back again, despite such known risks.

15. Prior to departing from Wrightsville Beach to Southport, Defendant E.B. had packed a cooler with alcoholic beverages to take with him and consume on the Vessel, with the full knowledge and approval of Defendants Mr. and Mrs. Bartlett.

3

16. Defendant E.B. and Plaintiff left Defendants Mr. and Mrs. Bartlett's dock on the Vessel in the afternoon for the trip to Southport.

17. On the way to Southport, Defendant E.B. was traveling much of the time at a speed of approximately 35 mph over ground. On the way south to Southport, Defendant E.B. consumed the alcoholic beverages that he had brought.

18. Upon arriving in Southport, Defendant E.B. docked the Vessel at the restaurant and Defendant E.B. and Plaintiff entered the Restaurant. During dinner at the restaurant Defendant E.B. consumed alcoholic beverages.

19. Sometime prior to 8:30 p.m., Defendant E.B. and Plaintiff boarded the Vessel for the return trip north to Wrightsville Beach. As the Vessel departed the area near the Southport restaurant and got underway in the ICW, the sun had set, and it was getting dark. Upon entering the ICW, Defendant E.B. accelerated the Vessel, and for most of the voyage was operating the Vessel at approximately the same speed he had been operating the Vessel on the way to Southport (i.e., approximately 35 mph over ground).

20. After departing Southport, Defendant was operating the Vessel in the ICW, between Southport and Wrightsville Beach, North Carolina, on navigable waters of the United States, with Plaintiff as his passenger, and heading toward Wrightsville Beach, North Carolina.

21. Upon information and belief, as the Vessel approached the Wrightsville Beach Drawbridge from the south on the ICW, Defendant E.B. was operating the Vessel at a speed of approximately 30-35 miles per hour over ground. At that time, it was dark.

23. As the Vessel headed up the ICW toward the Wrightsville Beach Drawbridge, Defendant was operating the Vessel at high-speed, without any lighting in his direction of travel (except for nighttime running lights), no significant lighting ahead of him, outrunning his forward

4

visibility, and was not keeping a proper lookout, when he negligently and recklessly steered the Vessel into a sign piling located in the ICW approximately one half mile south of the Wrightsville Beach Drawbridge. The piling and signage on the piling, extended well above the waterline.

24. The sign and piling would have been observable and avoidable if Defendant E.B. had been operating the Vessel at a reasonable speed for the conditions, while maintaining a reasonable lookout and/or with sufficient lighting to illuminate the water in front of the Vessel.

25. Defendant E.B. caused the Vessel to strike the sign piling slightly starboard of the Vessel's mid-line, both above and below the waterline (hereafter "the Incident"). A photograph showing where the Vessel struck the sign piling is attached hereto as Exhibit A.

26. After alliding with the above-described sign piling, the Vessel came to a near immediate stop which catapulted Plaintiff violently forward, causing her face, mouth, head, and body to strike the center console of the Vessel with great force.

27. At the time of the Incident, Plaintiff was positioned and holding on near the Vessel's center console and was catapulted forward with such force that she sustained, facial and dental fractures, including extensive nerve and tissue damage, as well as other injuries.

28. If Defendants had chosen not to operate or allow operation in near pitch-black conditions, or had been operating the Vessel at a reasonably safe speed for the conditions, reduced speed prior to the Incident, operated the vessel under reasonable and proper control, had kept a reasonable and proper lookout, and had operator Defendant E.B. not been using his cellular phone, or had not been drinking, then Defendants could have kept the Vessel under proper control, could have avoided the allision, and would not have caused Plaintiff to become injured.

29. Upon information and belief, following the allision of the Vessel with the sign piling in the ICW, Defendants did not call the U.S. Coast Guard, the North Carolina Wildlife

5

Resources Commission, or any other proper first responders. Instead, Defendant E.B. continued to operate the damaged Vessel from the location of the impact with the sign piling and made his way back to the home of his parents, Defendants Mr. and Mrs. Bartlett, where he docked the Vessel.

30. Upon information and belief, Defendants never reported the Incident to the North Carolina Wildlife Resources Commission as required by N.C. Gen. Stat. § 75A-11 and 33 C.F.R. § 173.55.

31. After docking the Vessel, Defendant E.B. drove himself and Plaintiff to Novant Health New Hanover Regional Medical Center for evaluation and treatment of his and Plaintiff's injuries.

32. On the date of the Incident, Plaintiff was treated at the Novant New Hanover Regional Medical Center where she was initially diagnosed with a facial fracture and injuries to her teeth, including their nerves and soft tissues, as well as other injuries to her body.

32. Following her evaluation at Novant New Hanover Regional Medical Center, Plaintiff was diagnosed with facial trauma, including an oblique fracture through the anterior maxilla involving the roots of multiple teeth. The Emergency Department physicians prescribed pain medication and instructed Plaintiff to follow-up with an oral surgeon and other dental professionals on an emergent basis.

33. Two days later, on July 11, 2022, Plaintiff saw Brady J. Semmel, DMD, MD, for an initial evaluation. Dr. Semmel informed Plaintiff that she suffered obvious dentoalveolar fractures of her anterior maxilla involving teeth numbers 8, 9, 10 and 11, as well as nerve and tissue damage, and possibly other damage that would become apparent over time. All of Plaintiff's

6

damaged teeth were displaced from the alveolar sockets. Teeth numbers 8 and 9 sustained Ellis Class II fractures of the incisal edges.

34. Dr. Semmel scheduled Plaintiff for emergency surgery the next day, on July 12, 2022. Dr. Semmel performed surgery for a closed reduction of the dentoalveolar fractures along with attempted reimplantation of the displaced teeth, wherein Dr. Semmel attempted to stabilize Plaintiff's teeth with bonded wire from teeth numbers 6 through 12. Dr. Semmel advised Plaintiff to see an Endodontist as soon as possible to treat likely nerve and tissue damage and a dentist to repair and/or replace her damaged teeth.

35. On August 11, 2022, Plaintiff saw Dr. Ross Nash and Dr. Tyler Wurmlinger for an initial consultation. Dr. Nash and Dr. Wurmlinger found Plaintiff to be suffering severe dental pain and concluded that Plaintiff would require urgent root canals on teeth numbers 8, 9 and 10, but that the root canal surgeries could not be performed until after the wire and bonding were removed on September 7, 2022.

36. On September 7, 2022, Plaintiff saw Dr. Semmel who removed the wire and bonding around Plaintiff's maxillary anterior teeth. He then performed additional procedures on her damaged teeth.

37. On September 8, 2022, Plaintiff saw Dr. Nash and Dr. Wurmingler for root canal surgery on teeth numbers 8, 9 and 10. Teeth numbers 8, 9 and 10 were also found to have pulpal necrosis, with symptomatic apical periodontitis.

38. On September 26, 2022, Plaintiff saw Dr. Nash for surgery to implant crowns and treat her ongoing infection and other dental work on multiple teeth.

39. On October 13, 2022, Plaintiff had multiple crowns placed by Dr. Nash.

7

40. On October 17, 2022, Plaintiff saw Dr. Brady Semmel for ongoing pain. Dr. Semmel diagnosed a recurrent infection in tooth number 9 and recommended surgery the following day.

41. On October 18, 2022, Plaintiff saw Dr. Brady Semmel for the infection that developed in her roots following the root canal previously performed on tooth number 9. Dr. Semmel performed an apicoectomy to remove the infected tissue in an effort to resolve the infection.

42. On October 25, 2022, Plaintiff saw Dr. Britta Lundgren due to her ongoing pain, and problems with the crowns implanted by Dr. Nash following the Incident.

43. On October 27, 2022, Plaintiff saw Dr. Nash for further work on six crowns that had been implanted due to the injuries suffered in the Incident.

44. On November 9, 2022, Plaintiff saw Dr. Brady Semmel for a post-surgical follow-up on the apicoectomy that he previously performed, and during this visit Dr. Semmel determined that due to the extent of the trauma, and the exposure of tissue near her teeth, that three root canals had become reinfected and would need to essentially be performed again to address the ongoing pain and infection.

45. On November 11, 2022, Plaintiff saw Dr. Britta Lundgren who performed further root canal surgery on the three teeth, and removed the six crowns from the damaged teeth, and prepared temporary crowns while new permanent crowns were being made.

46. From the time of the Incident until the present, Plaintiff has suffered from frequent, severe pain, lost strength, and functional limitations in her mouth and jaw, among other ailments, has not been able to work, despite her best efforts to do so, all caused by the Defendants' negligent acts and omissions.

47. Plaintiff was informed by her physicians and surgeons that following her injuries, surgeries, pain, and inflammation, that she will need additional surgeries and treatments and will likely have pain and physical impairments for the rest of her life.

48. Plaintiff will require continued medical care and treatment, including further surgeries and use of medications, as a result of her injuries.

49. As a direct, foreseeable, and proximate result of the Defendants' negligence, gross negligence and recklessness, Plaintiff has suffered and will continue to suffer from permanent severe pain, impairment, fatigue, sleeplessness, irritability, and other symptoms, which cause her physical pain, and emotional suffering and diminish her overall quality of life and adversely impacted her earning capacity. She has suffered lost income and work opportunities now, and in the future, and has not been able to return to work she previously performed as a result of the Incident and injuries. Her relationship with her two minor children has also been adversely impacted.

### FIRST CLAIM FOR RELIEF – NEGLIGENCE OF DEFENDANT E.B. AND DEFENDANTS MR. AND MRS. BARTLETT

50. The allegations in paragraphs above are re-alleged as if fully set forth herein.

51. Defendants had a duty to operate the Vessel with reasonable care for Plaintiff's safety while she was a passenger onboard the Vessel.

52. Defendants were negligent and grossly negligent and reckless in the operation of the Vessel, breaching their duty of reasonable care, in the following ways, among others:

    a. By operating a vessel at night in dark conditions without the means of safe navigation;

    b. failing to operate the Vessel at a safe speed in light of the conditions on the ICW;

9

Case 7:22-cv-00217-BO-RN   Document 1   Filed 12/14/22   Page 9 of 13

c.  By failing to keep the Vessel under proper control and on a safe bearing, considering its speed, conditions on the ICW, wave and other factors;

d.  By failing to provide for and keep a proper lookout for approaching hazards, and of the Vessel's bearing, considering their speed, conditions on the ICW, and other factors;

e.  By operating the Vessel without exercising reasonable care under the circumstances, including, *inter alia*, by operating at an unsafe speed, not taking proper steps to avoid pilings in the water, and other factors as will be shown in discovery and at the trial of this matter;

f.  By operating the Vessel after having consumed alcohol which affected judgment and ability to avoid obstructions in the waterway;

g.  By doing or failing to do all the foregoing and without assuring the safety and security of Plaintiff, a passenger;

h.  By violating applicable Inland Navigation Rules including, without limitation, Rules 2 (Responsibility) 5 (Look-out), 6 (Safe Speed), 7 (Risk of Collision) and 8 (Action to Avoid Risk of Collision); and

i.  Such other negligent, grossly negligent, and reckless acts as will be shown in discovery and at the trial of this matter.

53. Plaintiff's injuries and damages as described above were a direct, foreseeable, and proximate result of Defendants' negligence, gross negligence and recklessness.

## SECOND CLAIM FOR RELIEF– NEGLIGENCE AND LIABILITY OF DEFENDANTS MR. AND MRS. BARTLETT

54. The allegations in paragraphs above are re-alleged as if fully set forth herein.

55. As owners of the Vessel, and absent any bareboat charter, Mr. and Mrs. Bartlett are responsible for the navigation of their Vessel and are liable for torts committed by or with the Vessel.

56. Further, upon information and belief, Mr. and Mrs. Bartlett were also negligent, grossly negligent and reckless, and the Vessel was unseaworthy, in at least the following particulars:

a. By failing to ensure that the Vessel was safe to operate, was equipped with all required safety equipment and devices, and had a safe means of operating in the dark, at night;

b. By entrusting the Vessel to an unsafe operator when, upon information and belief, they failed to take steps to assure that their operator was safe, trained and competent;

c. By entrusting the Vessel to a person who, upon information and belief, was a known unsafe operator and whom they knew had a history of unsafe operation of vehicles and/or vessels;

d. By entrusting the Vessel to a person whom they knew, upon information and belief, had been drinking alcohol, and whom they knew would be drinking alcohol before, and during, the Vessel's operation and had a history of operating vessels after consuming alcohol;

e. By entrusting the Vessel to a person for operation at night, on a dark night, in waters which were poorly lit, knowing that the Vessel did not have adequate means of safe operation at night;

f. By having an incompetent and unseaworthy operator operating the Vessel;

g. By not using all means within their disposal to monitor the operation and speed of the Vessel to ensure its safe operation; and

h. By other negligent, grossly negligent, and reckless acts and/or omissions which will be shown at the trial of this matter.

57. Plaintiff's injuries and damages described above were a direct, foreseeable and proximate result of Defendants Mr. and Mrs. Bartlett's negligence, gross negligence and recklessness.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays to the Court for the following relief:

a. That judgment be entered for Plaintiff and against Defendants in an amount in excess of $75,000, exclusive of interest and costs, as demonstrated at trial for her past, present and future damages, plus pre-judgment and post-judgment interest, collection and recovery costs, attorneys' fees, and other amounts as are or may become due and owing;

b. That this Honorable Court grant Plaintiff such other and further relief as the Court may deem just and proper under the circumstances.

11

Case 7:22-cv-00217-BO-RN   Document 1   Filed 12/14/22   Page 11 of 13

Respectfully submitted this the 14th day of December, 2022.

        **MARTIN & JONES, PLLC**

        /s/ H. Forest Horne
        H. Forest Horne, NC Bar #16678
        Huntington M. Willis, NC Bar #46506
        4140 Parklake Avenue, Suite 400
        Raleigh, NC 27612
        Telephone: (919) 821-0005
        Facsimile: (919) 863-6086
        Email:   hfh@m-j.com
                    hmw@m-j.com

        **CLARK, NEWTON & EVANS, P.A.**

        /s/ Don T. Evans, Jr.
        Don T. Evans, Jr., NC Bar #19003
        Seth P. Buskirk, NC Bar #36664
        509 Princess Street
        Wilmington, NC 28401
        Telephone: (910) 762-8743
        Facsimile: (910) 762-6206
        Email: dte@clarknewton.com
                  spb@clarknewton.com

        **COUNSEL FOR PLAINTIFF**

